Slip Op. 07-188

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ———————————————— : | |
| UNITED STATES, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Before: WALLACH, Judge |
| MARTHA MATTHEWS, : | Consol. Court No.: 04-00162 |
| A.K.A. MARTHA O'GRADY; : | |
| NORTH STAR METALS, LLC; : | |
| AEGIS SECURITY INSURANCE CO.; : | |
| DANIEL McGUIRE; and McGUIRE STEEL : | |
| ERECTION CORP., : | |
| : | |
| Defendants. : | |
| ———————————————— : | |
| MARTHA MATTHEWS, : | |
| A.K.A. MARTHA O'GRADY; : | |
| NORTH STAR METALS, LLC; : | |
| DANIEL McGUIRE; and McGUIRE STEEL : | |
| ERECTION CORP., : | |
| : | |
| Third-Party Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| TAE BACK RESOURCES CO., LTD. and : | |
| HAESUNG CORP., : | |
| : | |
| Third-Party Defendants. : | |
| ———————————————— : | |
| AEGIS SECURITY INSURANCE CO., : | |
| : | |
| Third-Party Plaintiff, : | |
| : | |
| v. : | |
| : | |
| DANIEL McGUIRE and McGUIRE STEEL : | |
| ERECTION CORP., : | |
| : | |
| Third-Party Defendants. : | |
| ———————————————— : | |

[Plaintiff's Motions for Summary Judgment are GRANTED.]

Dated:  December 28, 2007

Jeffrey S. Bucholz, Acting Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; <u>Steven C. Tosini</u>, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; and <u>Kevin M.</u>

Green, Assistant Chief Counsel, Bureau of Customs and Border Protection, of Counsel, for Plaintiff United States.

The Law Office of Lawrence W. Hanson, P.C. (Lawrence W. Hanson) for Defendants Martha Matthews, aka Martha O'Grady; North Star Metals, LLC; Daniel McGuire; and McGuire Steel Erection Corp.

## OPINION

**Wallach, Judge**

## I
## INTRODUCTION

Plaintiff United States has filed two separate Motions for Summary Judgment against Defendants Martha Matthews (aka Martha O'Grady), North Star Metals LLC ("North Star"), Daniel McGuire, and McGuire Steel Erection Corp. ("McGuire Steel"), with respect to their liability for penalties and lost duties for seven entries of silicon metal by McGuire Steel, and 89 entries of the same product by North Star, pursuant to 19 U.S.C. § 1592(a) and 19 U.S.C. § 1592(d). This court has jurisdiction pursuant to 28 U.S.C. § 1582. The court heard oral argument on both Motions together. Because Defendants knowingly and purposely misrepresented the country of origin on the entries in question in order to avoid antidumping duties that would have been assessed upon that merchandise by Customs, Summary Judgment for Plaintiff is granted.

## II
## BACKGROUND

In June of 1991 the International Trade Commission determined that the domestic industry was being materially injured by imported silicon metal[1] from China, and the Department of Commerce issued an antidumping duty order that imposed a 139.49% dumping margin for all

---

[1] Silicon metal is provided for under subheadings 2804.69.10 and 2804.69.50 of the Harmonized Tariff Schedule of the United States ("HTSUS").

Chinese producers and exporters. <u>Antidumping Duty Order: Silicon Metal from the People's Republic of China</u>, 56 Fed. Reg. 26,649 (June 10, 1991). The order covered silicon metal "containing at least 96.00 but less than 99.99 percent of silicon by weight." <u>Id.</u> This order was in effect throughout the period in which the merchandise at issue was entered into the United States. <u>See</u> <u>Silicon Metal from the People's Republic of China: Final Results of Expedited Sunset Review of Antidumping Duty Order</u>, 65 Fed. Reg. 35,609 (June 5, 2000).

Martha Matthews and Daniel McGuire imported 96 entries of silicon metal through North Star Metals[2] and McGuire Steel[3] from 1999 through 2001. These silicon entries were exported[4] to the United States by the Korean Trading Companies Tae Bak Resources Co., Ltd. ("Tae Bak"), and Haesung Corporation ("Haesung"). Plaintiff's Rule 56(h) Statement (April 24, 2007) ("April Statement") ¶ 2. The entry documents submitted to Customs for all entries designated entry type code "01," indicating to Customs that they were not subject to antidumping duties. <u>Id.</u> ¶ 7; Plaintiff's Rule 56(h) Statement (February 28, 2007) ("February Statement") ¶ 9. The commercial invoices submitted by North Star and McGuire Steel designated the country of origin as Korea, <u>even though there was no silicon metal produced in Korea during the period the entries in question were made</u>. April Statement ¶ 8-9; February Statement ¶ 10-11.

Prior to and during the time that Defendants were making the entries at issue, the following pertinent communications and events occurred:

1.  On November 12, 1998, prior to the time period of the imports here at issue, Ken Smigel of LMC Corp. informed Ms. Matthews via facsimile that "Korea is still buying [silicon

---

[2] Matthews and McGuire were the only two participants in the LLC.

[3] McGuire was the founder, principal, President, and operations officer of McGuire Steel.

[4] On 89 entries, North Star was the importer of record; on the remaining seven, McGuire Steel was the importer of record. First Declaration of Merlin Hymel ¶ 3-9 (February 2, 2007); Third Declaration of Merlin Hymel ¶ 3-91 (April 17, 2007). In both scenarios, Matthews acted jointly and together as part of a continuing plan to defraud the United States. See discussion following, pp. 3-5.

metal] from China." Matthews Depo. Exhibit 4.  Ms. Matthews indicated that her

handwriting is on the facsimile. Id. at 15:25-16:1.

2.   In a letter regarding pricing of silicon metal drafted on November 12, 1998 by Ms.

Matthews to Ken Smigel, Ms. Matthews emphasized: "Confirm paperwork must say that

material is Korea origin – not China." Id. Exhibit 5.

3.   Ms. Matthews and Mr. McGuire travelled to Korea in November of 1998, at which time

they saw only a warehouse and no plants or manufacturing facilities. McGuire Depo. at

5-8, 20:6-24; Matthews Depo. at 24:9, 31:6-8.

4.   In response to a complaint made by Ms. Matthews about the composition of a shipment

of silicon metal, Tae Bak sent inspection certificates issued by the "Jilin Import & Export

Commodity Inspection Bureau of the People's Republic of China," with "Liaonhing

Metals & Minerals Import & Export Corp." as the co-signer. Matthews Depo. Exhibit 14

at 2.

5.   A printed email message originated from North Star's internet account. Ms. Matthews

wrote notes on a copy indicating it was regarding a dispute between Tae Bak, Haesung,

and North Star.  The email stated, "[w]hatever contract you have with China is your

business, not ours. . . ." Id. Exhibit 19.  The email message was signed "Best Regards,

Martha." Id.

6.   An email message sent on April 12, 1999, from Haesung to Ms. Matthews with respect to

"98.5% silicon" provided a shipping schedule and stated, "if we use the same shipping

company from Korea to USA as from China to Korea, it would save much time." Id.

Exhibit 24 at 13.

7.  In a letter to Tae Bak, Ms. Matthews wrote, "some customers will not buy [the material] as they know you have no refining in Korea and it is coming from China." Id. Exhibit 38.

8.  In August of 1999, Ms. Matthews wrote a letter to Mr. Suh at Tae Bak in which she complained, "about half of the bags had Made in China stenciled on them. WE CAN NOT HAVE MADE IN CHINA ON THE BAGS.  Fortunately, customs did not open the containers for clearance, but if they did the material would not be released to us without a 167% tax." Id. Exhibit 44; Martin Dec. (stating that these exhibits were seized from Mr. McGuire's office during execution of a search warrant).

9.  In July of 2000, M.G. Mayer, North Star's customs broker, received an email message that indicated the shipments of Korean silicon metal were instead of Chinese origin. Piazza Depo. at 29:20-40:8.  In response to M.G. Mayer's inquiry, Ms. Matthews wrote a letter to Tae Bak requesting that they "get something that looks official." Matthews Depo. Exhibit 31 at 7.  Tae Bak responded with options for responding to M.G. Mayer's inquiry, from which Ms. Matthews chose "[w]e insist that this material is from Korea. We can get certificate origin, as we say that the products was processed here even if raw material is from China," in a handwritten note to Tae Bak. Id. Exhibit 42.

In 2003, Customs issued pre-penalty and penalty notices to Ms. Matthews and North Star and Mr. McGuire and McGuire Steel.

### III
### STANDARD OF REVIEW

In determining the outcome of a motion for summary judgment, the court must examine whether there remain any "genuine issues as to any material fact" in dispute on the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The inquiry into factual matters is only to the extent they are established under the standards articulated in the Federal Rules of Evidence; USCIT R.56(e); the court will then examine whether those facts constitute the essential elements of a claim, and whether either party is entitled to a judgment as a matter of law.  Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R.56(c).


# IV
# DISCUSSION

Plaintiff argues that Defendants are liable for penalties pursuant to 19 U.S.C. section 1592(a), and for lost revenue and prejudgment interest pursuant to 19 U.S.C.  section 1592(d). According to Plaintiff, no material factual issues exist concerning Defendants' misrepresentations that the silicon metal was from Korea when it was instead from China, so the court is therefore free to determine liability. Plaintiff's Motion for Summary Judgment ("Plaintiff's First Brief") at 19.

Defendants claim that questions of material fact remain, and therefore summary judgment is not proper. Defendants' Joint Response to Plaintiff's Motion for Summary Judgment at 1 ("Defendants' Response").  Defendants argue that Plaintiff's Motion for Summary Judgment only applies to entries by McGuire Steel, as the importer of record, and does not address the questions of fact relating to the other Defendants. Id. at 2.  Additionally, Defendants say that material questions of fact exist regarding the joint culpability for those Defendants who were not the importer of record. Id.  Defendants further argue that material questions regarding the purity

of the silicon metal that was imported remain in dispute.[5] Id. at 3-4.  Further, Defendants say a question of fact remains as to whether the purity of the imported product was ever tested by the government, as the investigating special agent testified that he could not remember if a lab sample was taken. Id. at 4.  According to Defendants, Plaintiff relies upon a document[6] to establish the purity level of the imported merchandise that only states a purity level without providing adequate support for the assertions. Id. at 5.  Finally, Defendants argue that the court cannot determine a level of culpability based upon the record to date. Id. at 6.

Plaintiff responds that section 1592 is not limited to the importer of record, and furthermore, the Defendants never raised the "joint and several" affirmative defense in their answer and thus have waived it. Reply to Importer-Defendant's Response to Plaintiff's Motions for Partial Summary Judgment ("Plaintiff's Reply") at 2, 5-6.  Plaintiff also contends that Defendants' own prior statements demonstrate that the imported silicon metal falls within the antidumping duty order upon silicon metal from China. Id. at 9-10.  Additionally, Plaintiff argues that Defendants' claim regarding their level of culpability lacks any supporting evidence. Id. at 2, 12-13.  Plaintiff also notes that Rule 56(h) requires the moving and opposing party to provide statements of uncontroverted facts.  Since Defendants provided no such statement, Plaintiff argues that all material facts set forth in its statement should be deemed admitted as provided by Rule 56(h). Id. at 2-3.

## A
## Plaintiff Has Established that 19 U.S.C. § 1592(a) Was Violated

According to 19 U.S.C. § 1592, it is unlawful to enter any merchandise into the United States by means of any document, written or oral statement, or act that is materially false due to

---

[5] Counsel for Plaintiff and Defendants agree that silicon metal imported from China is subject to antidumping duties if the imported product is between 96% and 99.99% pure.  Defendant argues that the actual purity of the imported items remains unproven and contested. Defendant's Brief at 4.
[6] Exhibit 14 of the Martha Matthews Deposition, communication between Mr. Suh and Ms. Matthews.

fraud, negligence, or gross negligence.[7] 19 U.S.C. § 1592(a)(1)(A); United States v. Jac Natori Co., Ltd., 108 F.3d 295, 298 (Fed. Cir. 1997).  In order for a statement, document, or act to be considered material it must "have the tendency to influence Customs' decision in assessing duties." United States v. Thorson Chem. Corp., 16 CIT 441, 448, 795 F. Supp. 1190 (1992). Importers are required by 19 U.S.C. § 1481(a) to submit invoices to Customs that contain a detailed description of the merchandise, as well as any other information Customs may "require as being necessary to a proper appraisement, examination and classification of the merchandise." 19 U.S.C. § 1481(a).  19 C.F.R. § 141 additionally requires that along with a detailed description of the merchandise, the importer must include "the unique identifying number assigned by the Department of Commerce" indicating the country of origin for the goods. 19 C.F.R. § 141.61(c); see 19 C.F.R. § 141.86(a)(10).  An importer of record or authorized agent must use "reasonable care" in filing entry documents with Customs so that the agency will be able to "properly assess duties on the merchandise." 19 U.S.C. § 1484(a)(1)(B)(i).

In this case the record demonstrates that Martha Matthews represented the imported merchandise was from Korea when in fact she knew it was from China.[8]  Defendants Matthews and McGuire do not even attempt to establish that they acted with reasonable care in filing their entries as required by 19 U.S.C. § 1484.  In fact, Ms. Matthews actively disguised information indicating the silicon metal was of Chinese rather than Korean origin. See, e.g., Matthews Depo.

_____

[7] 19 U.S.C. § 1592(a)(1)(A) reads:

   (a) Prohibition.
    (1) General rule. Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--
     (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
      (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
      (ii) any omission which is material.
[8] Defendants do not deny in their memorandum in opposition to the Motion for Summary Judgment that the merchandise was originally from China.

Exhibit 19 (instructing a contact at Tae Bak, "[w]hatever contract you have with China is your business, not ours. . . ."); Id. Exhibit 31 at 7 (attempting to mislead Mr. Smigel regarding the origin of the merchandise).  Further, evidence on the record shows that Defendants were aware that antidumping duties would be placed on Chinese silicon metal if the merchandise was represented as or discovered to be such. Id. Exhibit 44 (informing Mr. Suh at Tae Bak that if Customs sees Made in China markings on the imported merchandise it will "not be released to us without a 167% tax"). As a result, there is no genuine issue of material fact as to whether 19 U.S.C. § 1592 was violated; Ms. Matthews purposefully misrepresented the country of origin of the silicon metal upon its importation to the United States in violation of the statute.

**B**
**Defendants' Violation was an Act of Fraud**

There are three levels of culpability under 19 U.S.C. § 1592: negligence, gross negligence, and fraud. 19 U.S.C. § 1592(a).  The standards for establishing the levels of culpability are as follows:

> (e) Court of International Trade proceedings. Notwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade for the recovery of any monetary penalty claimed under this section—
> (1) all issues, including the amount of the penalty, shall be tried de novo;
> (2) if the monetary penalty is based on fraud, the United States shall have the burden of proof to establish the alleged violation by clear and convincing evidence;
> (3) if the monetary penalty is based on gross negligence, the United States shall have the burden of proof to establish all the elements of the alleged violation; and
> (4) if the monetary penalty is based on negligence, the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence.

19 U.S.C. § 1592(e).

Parties must meet their burdens of proof regarding the negligence and gross negligence levels by a preponderance of the evidence.  The court may determine liability and assess penalties as a matter of law when the uncontroverted facts support such a determination. United States v. New-Form Mfg. Co., Ltd., 27 CIT 905, 918-19, 277 F. Supp. 2d 1313 (2003).

In cases of purposeful misrepresentation the court has in the past asserted a culpability level of fraud and assessed statutory penalties accordingly. United States v. Modes Inc., 16 CIT 879, 881-83, 804 F. Supp. 360 (1992).  Plaintiff has met its burden of establishing fraud by clear and convincing evidence, and statutory penalties are appropriate in this case.  As established above, Ms. Matthews' communications with the Korean companies demonstrate beyond refute they were not only aware of the Chinese origin of the silicon metal they were importing and the additional duties that were owed to the United States, but also made specific efforts to disguise the true origin from the government.  Customs relied upon Defendants' misrepresentations regarding the country of origin in clearing the merchandise, and as a result the United States was denied revenue it was owed by the importers.  There can be no question from this record that Ms. Matthews and Mr. McGuire were acting jointly, pursuant to a common plan, and as agents and representatives of North Star and McGuire Steel.  Mr. McGuire and Ms. Matthews, the two principals of the importing companies, visited the Republic of Korea together to view facilities and negotiate with Korean companies for the purchase of silicon metal. McGuire Depo. at 20:6-24; Matthews Depo. at 24:9, 31:6-8.  Furthermore, Ms. Matthews communicated with Tae Bak on occasion on behalf of McGuire Steel, informing the Korean company of problems with the merchandise and packaging. Matthews Depo. Exhibit 44, (stating that bags with Made in China markings were unacceptable; the bags referenced in the communication were housed at McGuire

Steel's warehousing facility). Defendants are therefore liable for the maximum penalties under

19 U.S.C. § 1592(c) and for the government's lost revenue pursuant to 19 U.S.C. § 1592(d).

## C
### Defendants are Jointly and Severally Liable for the Violation

Defendants argue in their brief that North Star Metals cannot be held liable on entries for

which McGuire Steel was the importer of record. Defendants' Response at 2. Plaintiffs respond

that Defendants fail for two reasons: first, the Defendants waived this defense by not raising it in

their answer, and second, section 1592 provides for liability for any "person" who commits a

violation, not just for importers of record.[9] Plaintiff's Reply at 6.

The language of section 1592 leaves room for those other than the importer of record to

be held accountable for violations. 19 U.S.C. § 1592 (stating that "no person, by fraud, gross

negligence, or negligence" may enter merchandise into the United States due to material false

statement); United States v. Priority Prods., Inc., 793 F.2d 296 (Fed. Cir. 1986) (finding that

Customs' need not include individual corporate officers in pre-penalty and penalty notices for

them to be held liable in a suit before the Court of International Trade). This court has

consistently allowed corporate officers to be held liable for violations that were committed in the

capacity of their employment. See, e.g., Priority Prods., 793 F.2d at 299-301; United States v.

Golden Ship Trading, 22 CIT 950 (1998) (finding that 19 U.S.C § 1592 does not provide an

exception for corporate officers). In this case, Defendants Matthews and McGuire were named

in the penalty notices and were acting within the scope of their employment, and therefore fall

within the scope of section 1592. Matthews continuously handled communications with the

Chinese exporters and Korean "straw men" throughout all 96 importations; McGuire

---

[9] While Plaintiff may be correct in its assertion that under Rule 8(d) Defendants have waived their right to the affirmative defense that they are not jointly and severally liable, the court resolves the question solely on the evidentiary merits of the case.

continuously caused McGuire Steel to act as the place and means for fostering the fraudulent

importations. See pp. 3-5 supra. Cf. United States v. Inn Foods, Inc., 515 F. Supp. 2d 1347, 1356

(CIT 2007).

The evidence on the record clearly thus demonstrates that Defendants participated jointly

in the import of Chinese silicon metals claiming false Korean origin.  Considering this evidence

on the record of the joint involvement of Mr. McGuire, Ms. Matthews, McGuire Steel, and North

Star, the Defendants are held jointly and severally liable for all 96 entries in question.

**D**
**The Entries at Issue Were Subject to the Antidumping Duty Order**

Defendants argue that Plaintiff does not provide sufficient evidence that the entries at

issue were subject to the antidumping duty order regarding silicon metal from China.

Defendants' Response at 3; see Silicon Metal from the People's Republic of China: Final Results

of Expedited Sunset Review of Antidumping Duty Order, 65 Fed. Reg. 35,609 (requiring that the

silicon metal contain between 96.00% and 99.99% silicon by weight in order to be subject to the

duty).  In making this argument they ignore that they, in personal communications and

representations to Customs, have identified the merchandise as within the acceptable purity

range for the antidumping duty order. See Matthews Depo. Exhibits 14, 38; Hymel Dec. I

Exhibits.  In every entry packet submitted to Customs, Defendants represented through

certificate of origin, laboratory report, or invoice that the purity of the silicon metal was at a

minimum 96.00%, and often between 99.00% and 99.99%. Hymel Decs. and Exhibits.

Additionally, each entry summary placed the merchandise under HTSUS subheading

2804.69.1000 (99.00 to 99.99 percent) or 2804.69.5000 (less than 99.00%), which are the

subheadings identified in the antidumping order. Id.

These representations by the Defendants are overwhelming evidence showing that the silicon metal in question falls subject to the antidumping duty.  They constitute a direct admission of fact, and can only be contravened by evidence creating a genuine issue, something Defendants have totally failed to submit here.  <u>See</u> USCIT R.56(e) ("when a motion for summary judgment is made as provided for in this rule [through sworn affidavits, depositions, etc.] an adverse party . . . must set forth <u>specific facts</u> showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." (emphasis added)).  As a result, there is sufficient evidence to conclude that the entries at issue here fall within the range of purity level to which the antidumping duty order applies.  Defendants, pursuant to 19 U.S.C. § 1592(d), therefore are liable to the United States for the full amount of duties that would have been assessed upon entry of the merchandise plus interest upon that amount.[10]

## E
## Damages

### 1
### Duties

According to 19 U.S.C. § 1592(d), "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed."  Defendants' violation of section 1592(a) is established above; Plaintiff is thus entitled to lost duties in the amount that would have been assessed under the antidumping duty order, 65 Fed. Reg. 35,609.  The order maintains a 139.49% dumping margin

---

[10] The antidumping duty statute mandates the assessment of interest in the event of underpayment, and it is within the court's equitable powers to do so. 19 U.S.C. § 1677g; <u>United States v. Yuchius Morality Co., Ltd.</u>, 26 CIT 1224, 1240-41 (2002).  As there has been no unreasonable delay on the part of the government in bringing this action, Plaintiff is awarded prejudgment interest on its lost revenue.  <u>See</u> <u>Yuchius</u>, 26 CIT at 1241.

for all Chinese producers and exporters entering silicon metal into the United States. 65 Fed.

Reg. at 35,609.  Defendants therefore owe 139.49% of the total entered value of each of the

seven entries for which McGuire Steel was the importer of record,[11] which totals $417,844.00 in

duties, plus interest.[12] Defendants also owe 139.49% of the total entered value of each of the 89

entries for which North Star was the importer of record,[13] which totals $12,417,039.00 in duties,

plus interest.  As Defendants Matthews, McGuire, North Star, and McGuire Steel are jointly and

severally liable, all Defendants are responsible for the duties relating to each of the 96 entries.[14]

**2**
**Penalties**

Additionally, penalties may be assessed for violations of 19 U.S.C. § 1592(a).  Under

section 1592(c), "A fraudulent violation of subsection (a) of this section is punishable by a civil

penalty in an amount not to exceed the domestic value of the merchandise."  It is within the

court's discretion to "determine a penalty within the parameters set by the statute." United States

v. Modes, Inc., 17 CIT 627, 636, 826 F. Supp. 504 (1993).  In making this determination, the

---

[11] Entry numbers 101-18720670, 101-18954873, 101-19224474, 101-19272515, 101-19391075, 101-19625225, and 101-19659257.  The combined total entered value for these seven entries was $299,550.00. Hymel Dec. I Exhibits 1-7 (providing customs invoices for the entries).

[12] See supra note 10.

[13] Entry numbers 101-19746518, 101-19826229, 101-19830759, 101-19907490, 101-19919750, 113-16208625, 113-16208633, 113-16370300, 113-16383402, 113-16545653, 113-16760476, 113-16957361, 113-16959706, 113-16987699, 113-17212519, 113-17227186, 113-17647557, 113-18028203, 113-18200687, 113-18234918, 113-18237119, 113-18669279, 231-32203797, 231-32203805, 551-88324721, 551-88330686, 551-88334357, 551-88334712, 551-88335552, 551-91928278, 551-91929474, 551-91930449, 551-91933518, 551-91940455, 551-91944614, 558-00402004, 558-00407219, 558-00413332, 558-00413340, 558-00419081, 558-00419107, 558-00419180, 558-00425005,558-00425013,  558-00426904, 558-00426920, 558-00427977, 558-00427993, 558-00431631, 558-00431789, 558-00431805, 558-00434882, 558-00436010, 558-00437067, 558-00439527, 558-00443420, 558-00447033, 558-00449914, 558-00461158, 558-00467643, 558-00467668, 558-00471629, 558-00480091, 558-00487161, 558-00487484, 558-00488359, 558-00508651, 558-00515805, 558-00532487, 558-00532495, 558-00536140, 558-00550224, 558-00553871, 558-00554002, 558-00568218, 558-00569570, 558-00571717, 558-00577920, 558-01586391, 558-01586730, 558-01590443, 558-01593066, 558-01600507, 558-01608369, 558-01608377, 558-01615026, 558-01616495, 558-01616511, and 558-01616529.  The combined total entered value for the eighty nine entries was $8,901,741.00. Riemer Dec. II Exhibit 1 (providing customs invoices for the entries).

[14] Joint and several liability "may be apportioned either among two or more parties or to only one or a few select members of the group, at the adversary's discretion.  Thus, each liable party is individually responsible for the entire obligation . . . ." BLACK'S LAW DICTIONARY 933 (8th ed. 1999).

degree of culpability of Defendants is to be considered. <u>United States v. Complex Mach. Works Co.</u>, 23 CIT 942, 946-47, 83 F. Supp. 2d 1307 (1999); <u>United States v. Thorson Chem. Corp.</u>, 16 CIT 441, 452, 795 F. Supp. 1190 (1992) ("The degree of culpability is a relevant factor for the Court in assessing a penalty under section 1592."). In this analysis of culpability, both mitigating and aggravating factors may be considered by the court in order to determine the appropriate penalty.[15] <u>Complex Mach. Works</u>, 23 CIT at 947. While the amount of such a penalty is discretionary for the court, id. at 946-47, <u>Inn Foods, Inc.</u>, 515 F. Supp. 2d at 1361, where its existence is proved without dispute and without any refutation, and where the Defendants have intentionally chosen to offer no mitigating evidence,[16] the maximum penalty is entirely appropriate.

In this case it is clear that Defendants made no good faith effort to comply with the statute; in fact, they purposely misled Customs in an attempt to avoid antidumping duties on their imported merchandise. The fraud was planned in advance during Matthews' and McGuire's joint trip to Korea and through communications with Korean companies, all with the intent to misrepresent the true country of origin of the materials at issue. In return, Defendants received the economic benefit of avoiding a duty rate of 139.49% on each of its entries. Additionally,

---

[15] The court in <u>Complex Machine Works</u> provided fourteen factors that the court may consider when determining penalties for violations of section 1592. 23 CIT at 949-50. These factors are as follows: (1) Defendants' good faith effort to comply with the statute; (2) degree of culpability; (3) history of previous violations; (4) the public interest in ensuring compliance with the regulation; (5) the nature of the violation; (6) the gravity of the violation; (7) Defendants' ability to pay; (8) the appropriateness of the size of the penalty in relation to Defendants' businesses, and the potential effect of the penalty on Defendants' ability to continue doing business; (9) that the penalty does not shock the conscience of the court; (10) the economic benefit gained by Defendants due to the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency; (13) whether the protected party has been adequately compensated; (14) such other matters as justice may require. <u>Id.</u>

[16] At oral argument, Defendant's counsel made it clear, on questioning by the court, that Defendants had chosen to submit no evidence of the mitigating factors of <u>Complex Machine Works</u>, n. 15 <u>supra</u>, cognizable under U.S. Court of International Trade Rule 56. They chose instead to argue only that the court "might" believe their oral testimony if it denied summary judgment. That intentional decision to offer no proof does not, of course, "raise any genuine issue as to any material fact" under Court of International Trade Rule 56(c), and it certainly falls within the stricture of Federal Rule of Civil Procedure 56(e)(2) that "if the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Defendants declined to present any evidence in this case to mitigate the evidence of fraudulent intent.  For the foregoing reasons, the maximum penalty under 19 U.S.C. § 1592(c) is appropriate.  Defendants Matthews, McGuire, North Star, and McGuire Steel are therefore jointly and severally liable for $797,662.00 in penalties reflecting the domestic value of the merchandise imported by McGuire Steel, and $23,000,293.44 in penalties reflecting the domestic value of the merchandise imported by North Star. April Statement ¶ 36 (citing Riemer Dec. II for North Star entries' domestic value); February Statement ¶ 6 (citing Riemer Dec. I for McGuire Steel entries' domestic value).

**V**

**CONCLUSION**

For the above stated reasons and given the need for deterrence, see <u>Inn Foods</u>, 515 F. Supp. 2d at 1362, the egregious and unremitting nature of Defendants' fraud, and their failure to offer any valid evidence of mitigation, Plaintiff's Motions for Summary Judgment are GRANTED.  Unpaid duties and penalties are awarded to Plaintiff as follows: (1) $12,417,039 plus interest as provided by law for unpaid antidumping duties upon the North Star entries; (2) $417,844 plus interest as provided by law for unpaid antidumping duties upon the McGuire Steel entries; (3) a penalty in the amount of $23,000,293.44 with respect to the North Star entries; and (4) a penalty in the amount of $797,662 with respect to the McGuire Steel entries.


        _/s/ Evan J. Wallach_____
        Evan J. Wallach, Judge

Dated: December 28, 2007
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
UNITED STATES,                          :
                                        :
            Plaintiff,                  :
                                        :
    v.                                  :
                                        :
MARTHA MATTHEWS,                        :        Consol. Court No.:  04-00162
A.K.A. MARTHA O'GRADY;                  :        Before: WALLACH, Judge
NORTH STAR METALS, LLC;                 :
AEGIS SECURITY INSURANCE CO.;           :
DANIEL McGUIRE; and McGUIRE STEEL       :
ERECTION CORP.,                         :
                                        :
            Defendants.                 :
_____ :
MARTHA MATTHEWS,                        :
A.K.A. MARTHA O'GRADY;                  :
NORTH STAR METALS, LLC;                 :
DANIEL McGUIRE; and McGUIRE STEEL       :
ERECTION CORP.,                         :
                                        :
            Third-Party Plaintiffs,     :
                                        :
    v.                                  :
                                        :
TAE BACK RESOURCES CO., LTD. and        :
HAESUNG CORP.,                          :
                                        :
            Third-Party Defendants.     :
_____ :
AEGIS SECURITY INSURANCE CO.,           :
                                        :
            Third-Party Plaintiff,      :
                                        :
    v.                                  :
                                        :
DANIEL McGUIRE and McGUIRE STEEL        :
ERECTION CORP.,                         :
                                        :
            Third-Party Defendants.     :
_____ :

## ORDER AND JUDGMENT

        This case having come before the court upon Plaintiff United States' Motion for
Summary Judgment and Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's
Motions"), the court having reviewed all papers and pleadings on file herein, having heard oral
argument on Plaintiff's Motions by each party, and after due deliberation, having reached a
decision herein; now, in conformity with said decision, it is hereby

ORDERED ADJUDGED AND DECREED that Plaintiffs' Motions be, and hereby are, GRANTED; and it is further

ORDERED ADJUDGED AND DECREED that a final judgment in the amount of $36,632,838.44 plus interest thereon as prescribed by law, be, and hereby is, entered in favor of Plaintiff, United States, and against Defendants Martha Matthews (aka Martha O'Grady), North Star Metals LLC ("North Star"), Daniel McGuire, and McGuire Steel Erection Corp. ("McGuire Steel"), jointly and severally; and it is further

ORDERED ADJUDGED AND DECREED that Plaintiff shall recover unpaid duties and penalties from Defendants Martha Matthews, North Star, Daniel McGuire, and McGuire Steel, jointly and severally, in the amount of: (1) $12,417,039 plus interest as prescribed by law for unpaid antidumping duties upon the North Star entries; (2) $417,844 plus interest as prescribed by law for unpaid antidumping duties upon the McGuire Steel entries; (3) a penalty in the amount of $23,000,293.44 with respect to the North Star entries; and (4) a penalty in the amount of $797,662 with respect to the McGuire Steel entries.


_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: December 28, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk